### Glenn W. Traer, Receiver of Illinois Coal Operators Mutual Employers Liability Insurance Company, Appellee, v. Consolidated Coal Company of St. Louis, Appellant.

1. INSURANCE—*when want of power of mutual company to create special fund no defense to action on assessment note.* Where the policyholders in a Coal Operators Mutual Employers Liability Insurance Company, having incorporated under the Act of May 16, 1905 (J. & A. ¶ 6581 *et. seq.*), as a mutual insurance company, adopted a resolution providing for the making of certain assessments, and that the money thus realized was to be put into a separate fund which should not be usable for current administrative expenses, but should go to pay deficits, one of such policyholders, which was a prospective beneficiary, and by its representative voted for such resolution, and subsequently paid part of the assessment levied against it and gave notes for the balance, and after paying part of them refused to pay the others, could not escape liability on the ground that the company had no power under the statute to create the special fund, because it voluntarily chose to agree to the plan.

2. INSURANCE—*claims and set-offs by policyholders in mutual company.* A policyholder in a mutual casualty company, which was liable to an assessment for a fund to meet losses, could not prove its claim against the receiver of the casualty company for losses sustained and at the same time interpose them as a set-off in order to avoid paying its share of the losses for which it gave the notes in question.

3.  INSURANCE—*claims and set-offs by policyholders in mutual company.* A policyholder in a mutual company cannot set off his losses against his liability for losses.

Appeal from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed April 19, 1921.

A. H. BELL and WHITNEL & WHITNEL, for appellant.

STUART BROWN, for appellee.

MR. JUSTICE WAGGONER delivered the opinion of the court.

The Illinois Coal Operators Mutual Employers Liability Insurance Company was incorporated in 1905 under the Act of May 16, 1905 (Session Laws 1905, page 293) as a mutual casualty insurance company. The original rates, charged by such company, averaged a little less than seventy cents of each one hundred dollars of the pay roll. The rates were slowly increased and in 1910 averaged a little more than one dollar on each one hundred dollars of the pay roll. The directors at their annual meeting in April, 1910, found, from their examination of the business of the company, that the assets had decreased so as to show a considerable deficit. They accordingly adopted a resolution recommending that the policyholders create a surplus fund to cover any deficit in the business of any given year. At a meeting of the policyholders in May, 1910, a committee was appointed to take up the matter. The committee did so and reported to the policyholders at a meeting in November, 1910. After discussion by the policyholders, and changes in the plans submitted by the committee, a resolution was adopted whereby it was provided that an assessment be made of fifteen cents per one hundred upon the aggregate pay roll of policyholders from the beginning of membership to September 1, 1910, plus fifty

cents per one hundred upon the pay roll of each policy-holder for the year beginning September 1, 1910. The resolution further provided that the money thus realized was to be put in a separate fund entitled "Special excess and guarantee fund" and that it should not be usable for current administrative expenses. The resolution further provided that when the losses of any fiscal year exceeded the premiums actually collected, the board of directors could by resolution withdraw from the "Special excess and guarantee fund" funds with which to pay the deficit.

A resolution was also adopted providing for the payment of twenty-eight per cent of the assessment made, in cash, and the residue in four equal instalments due in six, twelve, eighteen and twenty-four months thereafter for which non-negotiable notes should be given.

The assessment voted by the foregoing resolution was equal in the aggregate to one dollar for each one hundred dollars of the aggregate pay rolls of policyholders for the current year but since, approximately, one-half of the fund would be required to cover losses of past years, it was deemed equitable to spread one-half of the assessment upon the pay rolls of all policyholders from the time of entering the company to September 1, 1910, and the other half on the pay rolls for the year commencing September 1, 1910. This last half would of course be fifty cents for each one hundred dollars of the pay rolls for the current year, while the first half (although the same in dollars and cents) happened to be equal to fifteen cents for each one hundred dollars upon the aggregate pay rolls from entrance in the company to September 1, 1910.

The Consolidated Coal Company of St. Louis was a policyholder from the organization of the insurance company in the year 1905 to May 1, 1912. This company was represented, took part in and voted for the

resolution to create the special fund in question and was, in fact, one of the largest prospective beneficiaries thereof. It paid twenty-eight per cent of its assessment on December 21, 1910, and on that date gave four notes for the residue of the assessment and paid its two notes due in six and twelve months but refused to pay the notes due in eighteen and twenty-four months upon which this suit was brought.

Appellant contends that the insurance company had no power, under the statute, to create the special fund for which these notes were given; that under section 6, of the Act in question, the insurance company is limited to cash premiums and premium notes and "that no member shall ever be required to pay as his share for any loss more than the whole amount of his premium."

The statute was designed to protect the appellant against an involuntary increase of rates. Appellant could have insisted on prorating the losses and refused its assent to the plan for raising a fund to pay the deficit that was plainly inevitable but it, being a prospective beneficiary, chose to agree to the plan and it cannot now complain. The name given the fund is immaterial. The plan was, in fact, merely a scheme to raise the rates in order to obtain enough money to pay the losses. There can be no doubt that the insurance company had the power to raise this fund if the policyholders desired to waive the provision protecting them against an increase of rates, and appellant having consented to the plan cannot now be heard to object.

The notes in question were given December 1, 1910. Appellant, one year later, took a policy for the year December 1, 1911, to December 1, 1912, which was canceled May 1, 1912. Appellant claims it paid its premiums on this last policy to the date of its cancellation and therefore it was not liable on the notes in question which matured after May 1, 1912.

The fact that they matured after May 1, 1912, and the further fact that appellant paid all its premiums on the last policy taken until May 1, 1912, is wholly immaterial because there is no connection whatever between this last policy and the notes sued on. Appellant was obligated to pay the notes even if it had never taken the last policy.

Appellant further claims the right to set off $12,188.06 losses sustained. The same claims now interposed as a set-off, by appellant, were proved by it as a claim against the receiver in a chancery proceeding in the circuit court of Sangamon county. Appellant cannot prove these claims as a basis to collect its pro rata share in the chancery proceedings and at the same time interpose them as a set-off in order to avoid paying its share of the losses for which it gave its notes. Further, a policyholder in a mutual company cannot set off his losses against his liability for losses. *Lawrence v. Nelson,* 21 N. Y. 158.

The judgment in this case should be and is affirmed.

*Judgment affirmed.*